446 So.2d 815 (1984)
STATE of Louisiana, Appellee,
v.
Henry PETERSON, Appellant.
No. 15820-KA.
Court of Appeal of Louisiana, Second Circuit.
February 21, 1984.
*816 Voelker, Ragland, Brackin & Crigler by Charles R. Brackin, Lake Providence, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Baton Rouge, James D. Caldwell, Dist. Atty., Tallulah, John D. Crigler, Asst. Dist. Atty., St. Joseph, for appellee.
Before PRICE, MARVIN and SEXTON, JJ.
SEXTON, Judge.
The defendant appeals his conviction in a jury trial of the offense of theft of property of a value of more than $500, and his subsequent sentence to six years at hard labor.
The defendant has filed six assignments of error which contain four issues. The first issue is presented by Assignment of Error No. 1 in which the defendant contends that his motion for a continuance was improperly denied. The next issue, involving Assignments of Error Nos. 2, 3 and 5, asserts that the trial court improperly denied defendant's challenges for cause against three prospective jurors. The third issue is formed by Assignment of Error No. 4 wherein the defendant contends the trial court improperly sustained the State's challenge for cause of a prospective juror. Finally, the defendant contends that the trial court failed to follow the sentencing guidelines of LSA-C.Cr.P. Art. 894.1, and that the sentence imposed is excessive.

CONTEXT FACTS
The defendant, who held other jobs, was a part-time produce trucker for Mr. Warren Hopkins, a Tensas Parish soybean farmer. At about 4:30 p.m. on October 27, 1982, he arrived at the Great River Grain Elevator, used by Mr. Hopkins, driving Mr. Hopkins' red Ford truck. Without permission, the defendant placed the load of soybeans in storage in the name of Charles Sanders, a Madison Parish soybean farmer. Upon learning of this, Sanders sought a portion of the proceeds. When the defendant declined, Sanders demanded that defendant withdraw the use of his name. Thus, on November 11, 1982, the defendant went to the grain elevator and had the beans transferred to the name of Wylonie Harris, who was told by the defendant that the beans were stolen.
On November 16, 1982, Harris told the elevator that he wanted to sell the beans, and received a check for approximately $2,400. Upon being unable to cash the check because of a lack of identification, Harris went to the Tallulah Police Department in an attempt to obtain some sort of identification. In the process, the officers saw the scale ticket from the elevator and *817 became suspicious because Sanders' name had been scratched out, and also because they knew that Harris was not a farmer. They subsequently checked with the grain elevator and payment was stopped on the check.
After being arrested, the defendant told the arresting officer that he had met a man whom he only knew as Beer. He stated Mr. Beer had a truckload of beans which he needed to sell, but the beans were burdened with a lien. Thus, the defendant said that Beer had recruited him in order to put the beans in another name so that he could sell them. The defendant said he had no way of contacting Beer and thought Beer would get back in touch with him. He stated he had not heard from Beer since this event came to the attention of the authorities. Previous to this explanation, the defendant had stated to officers that he met a man whose truck had overturned near Jonesville. The defendant helped him by loading the beans in Mr. Hopkins' truck. Investigators determined that no truck had overturned near Jonesville and thus discredited the defendant's story.

MOTION TO CONTINUE
The defendant was originally represented by court-appointed counsel, Mr. Raymond Cannon, and trial was set for March 14, 1983. However, the defendant retained Mr. Charles Brackin at 5:00 p.m. on Friday, March 11, 1983. When the case was called to trial on Monday, the defense made an oral motion for a continuance which was followed by a written motion. See LSA-C. Cr.P. Art. 707. The motion was denied.
The minutes reflect that both Cannon and Brackin represented the defendant during the trial, with Mr. Cannon remaining as co-counsel. Although Mr. Cannon did not play a significant role during the trial, he was present throughout and was available for consultation. The court relieved Mr. Cannon of his appointment after the jury returned its verdict and was polled. In brief the defendant states "the competency of Raymond Cannon is not here at issue."
The defendant argues that the trial court's decision to deny the continuance denied the defendant the effective assistance of counsel. As the defendant and the State note in their briefs, a defendant is entitled to effective assistance of counsel. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); State v. Stripling, 354 So.2d 1297 (La.1978). However, the right to choose one's counsel cannot be used to obstruct the orderly procedure of the court. The right must be exercised in a reasonable manner. State v. Lawson, 393 So.2d 1260 (La.1981). The defendant's attempt on the day of trial to have his recently retained attorney handle his trial should be considered an unreasonable exercise of the right. Once the day of trial has arrived, the decision to allow the defendant to retain new counsel lies largely within the trial court's discretion. State v. Seiss, 428 So.2d 444 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983). Compare State v. Johnson, 389 So.2d 1302 (La.1980).
In this cause, the defendant had appointed counsel for at least eight weeks. Furthermore, he cites no specific prejudice which resulted from the denial of the motion for continuance, and specifically states in brief that the competency of appointed counsel is not at issue. Under the circumstances here presented, we find no abuse by the trial court in the decision to deny the motion for continuance. Reversal is therefore not warranted and this assignment lacks merit. State v. Durio, 371 So.2d 1158 (La.1979).

DEFENDANT'S CHALLENGES FOR CAUSE
By Assignments of Error Nos. 2, 3 and 5, the defendant complains the trial court improperly denied its challenges for cause against three prospective jurors. These challenges all occurred after the defendant had used his alloted peremptory challenges.[1]
*818 By Assignment No. 2, the defendant contends that challenge for cause to juror Lewis Bamburg should have been allowed because of Mr. Bamburg's friendship with a State's witness, Chief Deputy Vick Mahoney of the Tensas Parish Sheriff's Office. Mr. Bamburg, a parish employee for fourteen years as a motor grader, stated that he had "been knowing him quite a few years." Defense counsel asked the juror if the deputy was a good friend of his and the juror responded, "Well, I wouldn'twe're friends, I mean."
The crux of defendant's basis for challenge is found in the following exchange: "You'd find it pretty difficult to explain to Mr. Mahoney if you voted to acquit this fellow in this case, wouldn't you? Answer: Well, I don't know, I've never been in a situation like this."
Mr. Bamburg had testified that he thought he could be fair in the case and that if the State failed to prove its case beyond a reasonable doubt, he would vote not guilty. We note that defense counsel, other than the questions we have indicated, did not explore the depth of Mr. Bamburg's relationship with Deputy Mahoney. At trial, Deputy Mahoney, who was the arresting officer, identified a check and a computer printout which were introduced into evidence. He further told the jury of the substance of an exculpatory statement he received from the defendant, which statement was discredited by inconsistencies cited by Mahoney. There was no cross-examination of the deputy.
Under the circumstances, we cannot say that the trial court abused its discretion in failing to sustain this challenge. The extent of the relationship between the juror and the deputy was not explored and it appears that they were not "good friends." Furthermore, the juror testified that he could be fair and impartial. The existence of a relationship, even one of blood or marriage, is not sufficient to disqualify a juror unless it is shown that that relationship is sufficient to preclude the juror from arriving at a fair verdict. State v. McIntyre, 381 So.2d 408 (La.1980); State v. Jones, 345 So.2d 1157 (La.1977).
The second juror complained of is Emmett Gibson, whom the defense asserts should have been removed because he would not fairly consider the defense theory, implied during voir dire, that the defendant was innocent because he was simply assisting someone in avoiding taxes on the sale of the beans in question. However, our review of the record indicates that Mr. Gibson specifically indicated to defendant's counsel during voir dire that he would not consider an effort by the defendant to assist tax avoidance by the owner of a load of beans to be theft.
Finally, the defendant complains that the juror Hazel DeWitt should not have been allowed to serve over his challenge because of Mrs. DeWitt's friendship with the prosecuting attorney. Mrs. DeWitt is the wife of a retired farmer and resides about four miles from the parents of the assistant district attorney trying the case. She apparently had known him for a number of years. However, Mrs. DeWitt was emphatic that these circumstances would not bother her at all and that she would render a fair verdict. Once again, it must be shown that the relationship between the juror and the person involved in the case, here the assistant district attorney, is of such a nature that it would improperly influence the juror's conduct. State v. Winn, 412 So.2d 1337 (La.1982); State v. McIntyre, supra; State v. Carthan, 377 So.2d 308 (La.1979); State v. Jones, supra; c.f., State v. Lewis, 391 So.2d 1156 (La.1980).
Therefore, for the reasons stated, Assignments of Error Nos. 2, 3 and 5 are without merit.

STATE'S CHALLENGE FOR CAUSE
The defendant complains in Assignment of Error No. 4 that the court *819 improperly sustained the state's challenge for cause against the prospective juror Josephine Ward. However, the minutes show that the state only used five of its six peremptory challenges. We therefore need not examine whether the State's challenge for cause was erroneously allowed since the defense may only complain where the allowance of a State challenge for cause operates to afford the State more peremptory challenges than it is allowed by law. LSA-C.Cr.P. Art. 800. This assignment of error lacks merit.

EXCESSIVE SENTENCE
Assignment of Error No. 6 complains that the trial court failed to comply with the sentence guidelines of LSA-C.Cr.P. Art. 894.1, and asserts that the sentence imposed of six years is excessive.
In imposing sentence, the trial court recited a number of factors, including the age of the defendant; his lack of education; his employment history; his previous record including a conviction for carrying a concealed weapon; a citation for non-support; the fact that the defendant continued to assert his innocence despite convincing evidence to the contrary; the fact that the defendant's crime was inimical to the community's primary business of agriculture; the defendant's lack of remorse; and the fact that defendant was a trusted employee who broke that trust. The trial judge stated that in his view a lesser sentence would deprecate the seriousness of the offense and that because of defendant's lack of remorse, his future conduct was unpredictable. The trial court noted that the defendant had been accused of thefts of produce from a Mississippi employer while driving a truck for that employer. However, after a sentencing hearing just prior to sentence, the court stated that it was disregarding this matter entirely in imposition of sentence.
It is thus clear that the trial court more than adequately complied with LSA-C.Cr.P. Art. 894.1 in its recitation of reasons for sentence. State v. Straughter, 406 So.2d 221 (La.1981). Thus, the defendant's contention that the sentence is excessive under the circumstances forms the final and only serious issue in this case.
In arguing that the sentence is excessive, the defendant notes that the crime was non-violent, that it did not threaten serious harm, that the defendant does not have a record of similar conduct and that no economic loss was sustained.
A sentence is unconstitutionally excessive if it makes no measurable contribution to the acceptable goals of punishment and thus is nothing more than needless imposition of pain and suffering, or if it is grossly out of proportion to the severity of the offense. State v. Telsee, 425 So.2d 1251 (La.1983); State v. Sims, 410 So.2d 1082 (La.1982). Therefore, to determine whether the sentence is constitutionally excessive, we analyze the nature of the offense and the offender.
While we consider the sentence imposed to be high and under these circumstances is arguably at the top of the upper range of discretion, we cannot say that it is constitutionally excessive. The amount of money represented by the beans taken is a significant sum. Moreover, this theft was perpetrated against the primary business of the community. Recovery of the produce occurred through no effort of the defendant. The crime was only discovered through astute watchfulness of law officers. Moreover, the defendant failed to show any remorse as he continued to deny his guilt with obvious fabrications, even to the probation officer who conducted the pre-sentence investigation.
In summary, while we consider that the sentence imposed is at the upper limits of discretion, we cannot say that under the circumstances it is so severe as to be constitutionally excessive. This assignment of error lacks merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] At the time of trial, LSA-C.Cr.P. Art. 800 required that a defendant exhaust all peremptory challenges before he could complain of a ruling refusing to sustain a challenge for cause. This requirement was removed by Act No. 181 of 1983 effective subsequent to the date of this trial.