554 So.2d 127 (1989)
STATE of Louisiana, Appellee,
v.
Field CALHOUN, Appellant.
No. 21202-KA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1989.
Writ Denied March 30, 1990.
*128 Indigent Defender Office by Richard E. Hiller, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., A.M. Stroud, III, Liddell Smith, Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before HALL, SEXTON and LINDSAY, JJ.
SEXTON, Judge.
The defendant was charged by grand jury indictment with first degree murder, in violation of LSA-R.S. 14:30. The defendant was convicted as charged by a unanimous 12-member jury. The jury, however, could not agree whether the defendant should receive the death penalty or be sentenced to life imprisonment. The district court accordingly sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
Defendant now appeals, arguing that the district court erred in denying his motion to suppress and in ordering that he be shackled with leg restraints during trial. Because we conclude that defendant's assignments of error are without merit, we affirm.

FACTS
The defendant, age 17 at the time of this incident, admitted at trial that he shot and killed Robert Smith at approximately 2:00 a.m. on the morning of December 20, 1986. However, it was defendant's contention that, at the time of the shooting, he was intoxicated such that he could not possess the requisite specific intent to kill or inflict great bodily harm.
Susan Smith, the victim's widow, testified that she had picked up her husband at his place of employment, LSU Medical Center, at around 1:30 a.m. on December 20, 1986. Prior to going home, she and her husband stopped at Consumer's Grocery Store at the corner of Pierre and Poland Streets in Shreveport. Mr. Smith stayed in the car while Mrs. Smith went into the store. After purchasing several items and receiving change from a $100 bill, Mrs. Smith left the store. She testified that just after leaving the store, the defendant grabbed her, put a pistol to her head and demanded that she give him her money. Mr. Smith, seeing this, got out of the car and asked the defendant what he was doing. *129 The defendant backed up slightly and fired two shots, both of which struck Mr. Smith, killing him. The defendant and a friend, James Sherman, then ran from the scene.
The defendant presented several witnesses, including himself, who testified that he had been drinking alcohol steadily since noon of the preceding day. Additionally, the defendant testified that he had been using marijuana and cocaine. According to the defendant, he accidentally bumped into Mrs. Smith outside of Consumer's Grocery. This caused the pistol he was carrying to fall. Mrs. Smith began to scream, which caused Mr. Smith to get out of the car. The defendant stated that he was only trying to stop Mr. Smith's advance when he fired twice, killing Mr. Smith. The jury found the defendant guilty of first degree murder and this appeal follows.

ABANDONED ERRORS
Assignments of Error Numbers 1 and 4 through 31, articulated in the original specifications of error, were neither briefed nor argued; therefore, they will be considered abandoned. State v. Wright, 445 So.2d 1198 (La.1984); State v. Hahn, 526 So.2d 260 (La.App. 2d Cir.1988), writ denied, 532 So.2d 150 (La.1988).

MOTION TO SUPPRESS
In Assignment of Error Number 2, defendant asserts that the district court erred in not granting his motion to suppress. In his motion to suppress, the defendant sought to preclude from admission as evidence at trial both physical evidence seized and statements he made to the police. In brief the defendant only argues that the statements should have been suppressed. The defendant has therefore abandoned his argument that the physical evidence should also have been suppressed.
We will simply note that the physical evidence was seized from a residence of which defendant was not a resident but an occasional occupant. He was a friend of some of the residents and spent some nights there, apparently including the early morning hours of December 20, 1986, following the death of Robert Smith. The search of this residence was conducted following a valid consent by Sarah Collins, the head of the household, as well as the consent of two of her children, Calvin Collins and Jock Collins, prior to the search.
Regarding the statements made by the defendant, his contention is that he was illegally detained by the police on December 20, 1986. He therefore claims that the statements he subsequently made should have been suppressed as fruit of the poisonous tree, tainted by the earlier illegal detention. The trial court determined that there was no illegal detention of the defendant by the police.
At the hearing on the motion to suppress, the state presented the testimony of numerous police officers who went to the residence on December 20, 1986. The primary reason the police went to the Collins residence was to arrest Jock Collins for an armed robbery unrelated to the defendant's prosecution. Additionally, the police suspected that an individual known only as "Charlie Brown" might be at that residence. The police had received an anonymous tip that Charlie Brown was involved in the murder of Robert Smith. The defendant was at the residence at the time the police went to arrest Jock Collins and informed the police that he was also known as Charlie Brown.
The defendant was advised of his rights, told that he was not under arrest, informed of the homicide investigation, and he consented to come to the police station for an interview regarding the homicide investigation. Officer W.E. Scott started to put handcuffs on the defendant, but he immediately took them off when he was informed that the defendant was not under arrest, and was only going to the station to be interviewed. The defendant was then transported to the police station by Officer Scott in a paddy wagon.
At the police station, the defendant was given Miranda warnings and then interviewed by Detective Glen Schach in the presence of Detective Donald Ray Norwood. State's exhibit No. 4 shows the Miranda *130 rights card read to the defendant prior to this initial interview. It specifically shows that the word "arrest" was crossed out and the word "investigation" was written in its place by Detective Schach. Later that morning, the defendant was arrested, based not on what he said during the interview, but upon information acquired during field work performed in the interim. There were two subsequent interviews with the defendant after his arrest, one on December 21 and one on December 22.
The defendant presented several witnesses at the hearing on the motion to suppress. Jeannette Calhoun, the defendant's sister, testified that she saw him the morning of December 20, in handcuffs, at the police station. Ms. Calhoun stated that she had gone to the Collins house and discovered that the police had already left with her brother, but that she somehow got to the police station before her brother arrived. The district court found her testimony not to be credible for this reason.
The district court, for the same reason, also placed little credence in the testimony of Rosemary Glass, the defendant's cousin who accompanied Ms. Calhoun to the police station. Ms. Glass testified that she, Ms. Calhoun, and a Jimmy Lot went first to the Collins house, then to the defendant's mother's house, then to the police station, and still arrived before the defendant.
Both Jock Collins and Calvin Collins testified that the defendant was handcuffed before being placed in the paddy wagon. Jock Collins also testified that the defendant was in handcuffs when he came into the police station. Both of these witnesses have criminal convictions, Jock Collins for simple robbery and Calvin Collins for theft.
Finally, the defendant testified. His testimony was that he was arrested at the Collins residence. Handcuffs were placed on him, but removed at the direction of Officer Eddie Gurley prior to the defendant's being placed in the paddy wagon. He was then handcuffed again before being taken into the police station. He denied that he voluntarily consented to go to the police station. However, perhaps the most telling testimony as to the voluntariness of the defendant's statement comes from the tape made at his first interview at the police station. During this tape, played during the defendant's trial, the following colloquy occurred:
Q. And I told you that we were investigating a homicide; is that correct?
A. Yes.
Q. And I told you that you were not under arrest, did I not?
A. Yes.
Q. Okay. And I asked if you would come to the detective office, and you agreed with that; is that correct?
A. Yes.
The district court denied defendant's motion to suppress, concluding that the defendant was not arrested at the time that the police went to the residence in question. Part of this conclusion was based upon a credibility determination that the testimony of the police officers was more believable than that of defendant's witnesses, including his own testimony.
Defendant asserts that this was error, basing his argument upon the results reached in Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Defendant's reliance on Dunaway is misplaced, however. In Dunaway, defendant was taken into custody for investigatory purposes. Although he was not told that he was under arrest, he would have been restrained had he tried to leave. The Supreme Court concluded that the police had "seized" the defendant and transported him to the police station for interrogation purposes and that probable cause did not exist at the time. See also State v. Weinberg, 364 So.2d 964 (La.1978), and State v. Freeman, 503 So.2d 753 (La.App. 3rd Cir.1987), to the same effect.
In State v. Thibodeaux, 414 So.2d 366, 368 (La.1982), the Louisiana Supreme Court discussed what constitutes an illegal detention:
Whether a person has been taken into custody, detained or deprived of his freedom in a significant way must be decided by an objective test. State v. Liner, 397 *131 So.2d 506 (La.1981); State v. Menne, 380 So.2d 14 (La.1980). Neither the defendant's subjective impression nor the formality of an official arrest will be determinative of the issue of his claimed illegal detention. State v. Menne, supra. Rather, all of the circumstances surrounding the defendant's transportation to the stationhouse and questioning should be evaluated.
In State v. Thibodeaux, the police had received a tip from a confidential informant that the defendant was involved in several burglaries. Two plainclothes officers went to the defendant's house, advised him of his rights and requested that he accompany them to the police station, but specifically told the defendant that he did not have to go with them. The defendant testified that he felt that if he did not accompany the detectives he would have been immediately arrested. The Louisiana Supreme Court found no illegal detention or arrest and therefore no error by the trial court in denying the defendant's motion to suppress his confession made at the station house.
In State v. Statum, 390 So.2d 886 (La. 1980), cert. denied, 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 619 (1981), where the defendant accompanied the police voluntarily to the sheriff's office, there was no formal announcement of arrest, no drawn guns, no handcuffs, and no threats, and where nothing was used to force the defendant to go to the sheriff's office, the Louisiana Supreme Court found there was no arrest. In that case, the defendant was not forcibly detained until his story was shown to be false. Similarly, in the instant case, the police testified that the defendant was free to leave until other information from the field investigation developed giving the police probable cause to arrest the defendant.
We are of the the opinion that there was likewise no illegal detention in this instance. The police officers and detectives all testified that the defendant voluntarily came to the police station. Their testimony was substantially consistent.
On the other hand, the testimony of the defense witnesses, especially Jeannette Calhoun and Rosemary Glass, was inconsistent with the logical time frame and even with the testimony of other defense witnesses. Also, the defendant testified that his handcuffs were removed before he was placed in the paddy wagon; however, the two Collins brothers testified that the defendant was in handcuffs when placed into the vehicle.
Defendant focuses on his having been momentarily handcuffed, or at least threatened with the prospect of same, and his being transported to the police station in a paddy wagon, rather than a police patrol unit, as being objective indications that he was legally under arrest.
The state argues that an express admonition by one of the detectives not to handcuff defendant, coupled with a second set of Miranda warnings regarding defendant's being under investigation and not under arrest, were objective indications that he was not under arrest and that any subjective impressions which defendant may have gotten to the contrary were not reasonable.
The fact that the defendant was at first handcuffed and then released from those handcuffs (as admitted by the defendant himself) reinforces the position that the defendant was not under arrest and that he was not forced to accompany the officers to the police station. The Miranda card signed by the defendant itself states that the defendant was under investigation, rather than under arrest.
Ultimately the defendant's own statements at the interview are his undoing. There he stated that he was informed he was not under arrest and that he came to the police station voluntarily. As the defendant was not illegally detained, his statements were voluntarily made. The trial court committed no error in denying the motion to suppress. This assignment of error lacks merit.

LEG SHACKLES
The remaining assignment of error briefed by the defendant concerns his having been restrained by leg shackles while in the courtroom. He argues that the existence of the leg shackles destroyed the presumption *132 of innocence to which he was entitled and denied him due process of law.
The district court based its decision to require leg restraints on the defendant on reports from the parish jail regarding the defendant. It stated on the record that the defendant had suffered a loss of privileges for 15 days because of a disciplinary disturbance labeled a defiance. He also had suffered a loss of privileges for 30 days for fighting and defiance. At the same time, the defendant was charged with aggravated battery on an officer. The defendant's file also showed on one occasion that he had contraband, a home-made knife, in his tennis shoes. Finally, the defendant was transferred to the parish jail from the Caddo Detention Center on the basis of threats to deputies and alleged plans to escape. At that time the defendant was classified as a closed custody prisoner, meaning that during transport the defendant would have arm restraints and a chain around his waist.
In attempting to insure that the jury did not notice that the defendant was shackled, the district court required leg restraints only. Additionally, the district court stated that the defendant would be in court prior to the jury every day so that the jury would not see him walking into court wearing leg restraints. The sheriff's deputies were instructed that the defendant was not to be transported in the presence of any jury members. Finally, because defendant chose to testify on his own behalf, additional provisions were taken to insure that the jury would not notice the shackles. The court rearranged the witness box so that the jury would be unable to see the shackles. Provisions were also made to have the defendant on the witness stand before the jury entered the court room.
Ordinarily a defendant before the court should not be shackled, handcuffed or garbed in any manner destructive of the presumption of his innocence or destructive of the dignity and impartiality of the judicial proceedings. Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); State v. Wilkerson, 403 So.2d 652 (La.1981). However, exceptional circumstances may require, in the discretion of the trial court, the restraint of the prisoner for reasons of court room security or order or where the prisoner's past conduct reasonably justifies apprehension that he may attempt to escape. State v. Wilkerson, supra; State ex rel Miller v. Henderson, 329 So.2d 707 (La.1976). For a finding of reversible error, the record must show an abuse of the trial court's reasonable discretion resulting in clear prejudice to the accused. State v. Wilkerson, supra; State ex rel Miller v. Henderson, supra.
In State v. Weeks, 449 So.2d 1158 (La. App. 2d Cir.1984), while defendant was on trial for armed robbery, he was secured by leg shackles and handcuffs. The district court had been advised that the defendant had attempted one escape and was rumored to be planning another attempt. In light of those facts, the "holds" on the defendant from other jurisdictions for charges of aggravated robbery, first degree murder, aggravated escape, aggravated armed robbery, and aggravated kidnapping, and the measures taken by the district court to avoid the possibility of prejudice which might arise from the restraints, this court found no abuse of the trial court's discretion and no prejudice to the defendant.
We are of the opinion that the district court did not abuse its discretion in ordering the defendant to be placed in leg restraints. Based on the reports of disciplinary problems by the defendant while in jail and his alleged plans to escape, the district court reasonably believed the shackles were a necessary precaution. Additionally, every possible step was taken to insure that the jury did not see the defendant's restraints. Finally, even if the trial court erred in requiring the defendant to wear restraints, there is nothing in the record to show that the jury saw the leg restraints. Thus, defendant has not demonstrated that any prejudice resulted from his legs being shackled. State v. Washington 430 So.2d 641 (La.1983); State v. Montana 489 So.2d 348 (La.App. 4th Cir.1986), writ denied, 493 So.2d 1205 (La.1986). For *133 all the above and foregoing reasons, defendant's conviction is affirmed.
AFFIRMED.