651 So.2d 370 (1995)
STATE of Louisiana, Appellee
v.
David FLEEKS, Appellant.
No. 26720-KA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 1995.
*371 Allan R. Harris, Asst. Indigent Defender, for appellant.
Richard Ieyoub, Atty. Gen., Paul J. Carmouche, Dist. Atty., Rebecca Bush, Asst. Dist. Atty., for appellee.
Before NORRIS and WILLIAMS, JJ., and PRICE, J. Pro Tem.
WILLIAMS, Judge.
The defendant, David Fleeks, was indicted by a grand jury for the first degree murder of Latosha June, a violation of LSA-R.S. 14:30. The indictment was later amended to charge the defendant with second degree murder and second degree kidnapping, violations of LSA-R.S. 14:30.1 and 14:44.1, respectively.
After a jury trial, the defendant was found guilty as charged. The trial court sentenced him to life imprisonment without benefit of probation, parole or suspension of sentence for the second degree murder conviction and to serve an eight-year sentence at hard labor, two years of which must be served without benefit of probation, parole or suspension of sentence, for the second degree kidnapping conviction. Setting forth twelve assignments of error, the defendant appeals these convictions.[1] We affirm.

FACTS
In the early morning hours of August 16, 1991, the victim, Latosha June, allowed the defendant to enter the apartment where she lived with her mother and her siblings. June, who was 15 years old at the time of the murder, had previously dated the defendant. Upon entering the apartment, the defendant pulled out a gun and told June to unplug the telephones. After she complied with this demand, he forced her to leave the apartment and walk to a path in a nearby vacant lot. Defendant shot June in the back of the head and left her body on the path.
Defendant left the scene on a bicycle and rode to a friend's house. He told Michael Laney and James Jones that he had just killed a girl named Wanda. Laney and Jones saw the defendant take five bullets out of his gun which held six bullets. Defendant then called a cab and went home. The defendant was arrested on the same day and confessed to the murder.

DISCUSSION

Assignment of Error No. 1
By this assignment, the defendant contends the trial court erred in ordering him to be handcuffed and shackled to his chair during the trial.[2] He asserts there was *372 no evidence in the record to justify the trial court's order and the trial court should have held an evidentiary hearing prior to its determination that he should be physically restrained during trial. He argues the trial court based its decision to restrain him solely on the prosecutor's argument concerning his past behavior and the fact that another judge had previously ordered him to be restrained during pretrial proceedings. He contends he had not demonstrated any disruptive or violent behavior in court for almost two years.
A review of the record shows that four days before trial, December 2, 1993, the trial court, apparently after noticing the previously issued court order requiring the defendant to be restrained, raised the issue of whether the defendant should be restrained during trial and if so, the procedure to be followed in restraining the defendant.
The state argued that the defendant should be restrained because he had a history of violent behavior while he was in court. The state cited an instance where, on January 21, 1992, the defendant, while in court and wearing handcuffs, jumped on top of counsel table and lunged toward the then sitting judge and other courtroom personnel, before being restrained and removed from the courtroom. As a result of that incident, the trial judge hearing the pretrial motions ordered that the defendant be restrained to a chair when brought into court.
During a sanity commission hearing on February 10, 1992, the defendant, in compliance with the trial court's order, was physically restrained to a wheelchair. However, because the defendant began making loud noises and exhibited obstreperous behavior, he again had to be removed from the courtroom. Dr. Dean Robinson, a member of the sanity commission, testified at the sanity hearing that he had to terminate a February 7, 1992 interview with the defendant because the defendant had become violent and jumped across the table in his direction. Dr. James Phillips, another member of the sanity commission, testified that when he interviewed the defendant on January 31, 1992, the defendant became irate and threw a chair at him.
The trial court took judicial notice of the previous court order requiring the defendant to be restrained and a notation on the outside cover of the minute clerk's file showing the defendant was required to be in a jacket and iron cuffs. The trial court then concluded that, based on the defendant's past physical and verbal disruptions in court (in particular, his attack on the other judge), the defendant posed a security risk to all persons participating in the jury trial. The trial court ordered that the defendant be restrained to his chair in the least restrictive fashion. The trial court further ordered that the restraints be covered by a blanket or another "non-obnoxious looking" covering so the restraints would not be seen by the jury.
In State v. Calhoun, 554 So.2d 127 (La. App.2d Cir.1989), writ denied, 558 So.2d 601 (La.1990), this court explained the standards for judging the propriety of restraint in the courtroom:
Ordinarily a defendant before the court should not be shackled, handcuffed or garbed in any manner destructive of the presumption of his innocence or destructive of the dignity and impartiality of the judicial proceedings. However, exceptional circumstances may require, in the discretion of the trial court, the restraint of the prisoner for reasons of court room security or order or where the prisoner's past conduct reasonably justifies apprehension that he may attempt to escape. For a finding of reversible error, the record must show an abuse of the trial court's reasonable discretion resulting in clear prejudice to the accused.
State v. Calhoun, supra at 132 (citations omitted). See also State v. Plater, 643 So.2d 313, 316 (La.App.2d Cir.1994); and State v. Jeffers, 623 So.2d 882, 887 (La.App.2d Cir. 1993).
In the instant case, we are convinced the trial court did not abuse its discretion in ordering the defendant restrained to his chair during the trial. The defendant's past history of violent outbursts in the courtroom and his attacks on the members of the sanity commission were reasonable bases for the trial court's ruling that the defendant had to be restrained in some manner.
*373 Furthermore, the defendant has failed to show any prejudice. The trial court attempted to use the least obvious means of restraint. Instead of the "wheelchair" that had been used for previous court appearances, the trial court ordered the defendant to be handcuffed and shackled to a regular chair. In compliance with the trial court's instructions, the restraints were covered during the trial so they would not be visible to the jury.
There is nothing in the record to indicate that the jury either saw or was influenced by the restraints. In brief, the defendant contends he was prejudiced in that he was the only person in the courtroom who was unable to stand as the judge entered and left the room. Defendant has not shown that the jury was influenced in reaching its verdict by the defendant's failure to rise when the judge entered or left the courtroom. In addition, there was substantial evidence of the defendant's guilt including his confession to the police and his statements to Michael Laney and James Jones. See State v. Murphy, 463 So.2d 812, 818 (La.App.2d Cir.), writ denied, 468 So.2d 570 (La.1985).
The defendant's history of repeated attacks on courtroom personnel and sanity commission members during his pretrial court appearances was a reasonable basis for the trial court's decision to restrain him during trial. Based on the described problems, we conclude the trial court reasonably believed the handcuff-to-chair method was necessary to prevent the defendant from disrupting the trial and to protect the jury and other courtroom personnel.
Because there has been no showing of the trial court's abuse of discretion and of prejudice to this defendant, this assignment of error is without merit.

Assignment of Error No. 2
By this assignment, the defendant contends the trial court erred in refusing to grant his challenge for cause. In order to prevail on this alleged error, the defendant must show, inter alia, that he exhausted all of his peremptory challenges. State v. Lee, 559 So.2d 1310, 1316 (La.1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991); State v. Scriber, 605 So.2d 661 (La. App.2d Cir.1992).
In this case, the defendant failed to show he exercised all of his peremptory challenges. The record reflects he exercised only eleven of the twelve peremptory challenges allotted to him by law. Therefore, the defendant does not have a ground to complain about alleged errors regarding the trial court's denial of his challenge for cause.
This assignment of error lacks merit.

Assignment of Error No. 3.
By this assignment, the defendant contends the trial court erred in granting the state's challenge for cause. The state requested that prospective juror Paul Fisher be excused for cause because his stepson had recently been accused of the murder and rape of a medical student at LSU-MC. That murder took place about two months prior to the defendant's trial. Mr. Fisher expressed reservation about his being able to concentrate on the case at hand, stating that he would be thinking about how his stepson would be going through the same type of trial. The trial court granted the state's challenge for cause.
A defendant does not have grounds to complain about the granting of a state's challenge for cause, unless the effect of the ruling is to allow the state to exercise more peremptory challenges than is allowed by law. State v. Peterson, 446 So.2d 815 (La. App.2d Cir.1984); LSA-C.Cr.P. Art. 800(B).
In this case, the record shows the state exercised only six of the twelve peremptory challenges allotted to it by law. LSA-C.Cr.P. Art. 799. Thus, the granting of the state's challenge for cause, even if erroneously granted, did not effectively allow the state to exercise more peremptory challenges than it was allowed to exercise by law. Therefore, the defendant does not have grounds to complain.
This assignment of error is without merit.

Assignment of Error No. 4
By this assignment of error, the defendant contends the trial court erred in denying his motion for mistrial which was based upon an objection to the state's exercise of its peremptory challenges in an allegedly racially biased manner.
*374 It is well established in our law that the race of a juror cannot be the sole basis of a decision to exercise a peremptory challenge against him. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); LSA-C.Cr.P. Art. 795. See also Georgia v. McCollum, 505 U.S. ___, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); Georgia v. Carr, ___ U.S. ___, 113 S.Ct. 30, 121 L.Ed.2d 3 (1992); and State v. Wilson, 632 So.2d 861, 863-64 (La. App.2d Cir.1994). When a defendant objects on the ground that the prosecutor exercised a peremptory challenge in a racially biased manner, the defendant "must establish a prima facie case of purposeful discrimination. In doing so, he must show that pertinent circumstances raise an inference that the prosecutor used peremptory challenges to exclude venire members of a cognizable racial group from the jury solely on the basis of race." State v. Rose, 606 So.2d 845, 850 (La.App.2d Cir.1992). The fact that the defendant and the excluded juror share the same race is not determinative of the issue of whether there has been purposeful discrimination. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); State v. Rose, supra.
In determining whether the requisite prima facie showing of racial discrimination has been made, the trial court should consider all relevant factors, including whether the prosecutor's questions and statements during voir dire support or refute an inference of discriminatory purpose. State v. Hamilton, 594 So.2d 1376, 1379 (La.App.2d Cir.1992); State v. Collier, 553 So.2d 815 (La.1989). "The trial court's conclusion that a prima facie case had not been established is entitled to great deference." State v. Hamilton, supra at 1380.
Here, when the defendant objected, he merely stated, "Ms. Bush has now exercised three of her peremptory challenges ... against [African-American] female jurors. We would move the court to order a mistrial on the grounds that the state has improperly used race as the basis for excusing jurors." After rebuttal argument by the state, the trial court determined that the defendant failed to make the requisite prima facie showing of a systematic exclusion of African-Americans from the jury.
At the outset we note that both the defendant and the victim in this case were African-American. Furthermore, the prosecutor's questions and statements during voir dire do not support an inference of racially discriminatory purposes.
At the time the defendant objected, eleven jurors had already been accepted, and the state had exercised only four of its available twelve peremptory challenges. Three of the challenges were used to strike prospective African-American jurors and one was used to strike a prospective white juror. Eight white jurors and three African-American jurors had already been accepted by the state and the defense. Ultimately the jury was comprised of eight whites and four African-Americans, and the prosecutor exercised a total of six of her twelve peremptory challenges, three of which were used to exclude white jurors.
In Hamilton, supra, this court upheld a trial court ruling finding that the defendant failed to make a prima facie case where the jury was comprised of eight whites and four African-Americans. The Hamilton court reasoned that assuming, as a prosecutor seeking to discriminate might, that jurors would vote as a racial block, a conviction could not be obtained because a vote of ten was needed.
Assuming arguendo that the circumstances established a prima facie case of purposeful discrimination, we find the prosecutor expressed race neutral reasons for excluding the three jurors. The trial judge did not find that the prosecutor's stated reasons were pretexts for excluding African-Americans solely because they were the same race as the defendant. The prosecutor's explanation need not rise to the level justifying the exercise of a challenge for cause but must be more than the prosecutor's assumption that the juror will be partial to the defendant because of their shared race. Collier, supra.
The state excluded potential juror Effie Smith because she expressed reservations about voting for a conviction which would result in a sentence of life imprisonment. *375 Ms. Smith stated that she would prefer to render a verdict of manslaughter. The fact that a juror may be influenced by the mandatory penalty of life imprisonment disqualifies a prospective juror pursuant to LSA-C.Cr.P. Art. 797. State v. Essex, 618 So.2d 659 (La. App.2d Cir.1993). This is an acceptable, racially neutral reason to exercise a peremptory challenge.
Carla Moore was a pre-school teacher who expressed concern for her students. Specifically, she stated that she was worried about a new student who was to join her class and a student who was in foster care and did not communicate with anyone except her. A perceived lack of concentration is an acceptable, racially neutral reason to exclude a prospective juror. State v. Rose, 606 So.2d 845, 851 (La.App.2d Cir.1992).
The final peremptory challenge exercised by the state against an African-American venire member was used to excuse Diane Hamilton. In explaining why Ms. Hamilton was excused, the prosecutor stated that initially she had decided to accept Ms. Hamilton because, although she had sensed some antagonism, she was an ideal juror. However, once Ms. Hamilton was tentatively accepted, the prosecutor noted that "she rolled her eyes" and seemed to be voicing displeasure at being chosen. A perceived lack of interest or hostility in serving on the jury is an acceptable, racially neutral reason for exercising a peremptory challenge. See Rose, supra at 850.
Considering the circumstances of this case taken as a whole, it is reasonable to conclude there is no inference that the prosecutor used peremptory challenges to exclude African-Americans from the jury solely because of their race. The trial court's conclusion in this regard is entitled to great deference.
Finding the defendant failed to make a prima facie showing of purposeful discrimination, the trial court properly denied his motion for mistrial. A mistrial is a drastic remedy and should only be granted in cases where the defendant suffers substantial prejudice. State v. Stills, 600 So.2d 134 (La. App.2d Cir.1992); LSA-C.Cr.P. Art. 775.
This assignment of error is without merit.

CONCLUSION
Having found no merit to any of the defendant's assignments of error, the defendant's convictions are affirmed.
AFFIRMED.
NOTES
[1] The defendant has neither briefed nor argued Assignments of Error Nos. 1, 2, 4, 5 and 9 through 12, inclusive. Hence, we consider these assignments of error to have been abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App.2d Cir. 1989), writ denied, 558 So.2d 1123 (La.1990); URCA Rule 2-12.4.
[2] Defendant unsuccessfully appealed to this court for supervisory writs on this issue. State v. Fleeks, 26,085 (La.App.2d Cir.1993). He also made a timely objection to the use of the restraints during the trial.