678 So.2d 586 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Johnny JOE, Defendant-Appellant.
No. 28198-KA.
Court of Appeal of Louisiana, Second Circuit.
July 26, 1996.
*588 James E. Beal, Indigent Defender Board, Jonesboro, for Defendant-Appellant.
Richard Ieyoub, Attorney General, Walter E. May, District Attorney, Douglas L. Stokes, Jr., Assistant District Attorney, for Plaintiff-Appellee.
Before NORRIS, GASKINS and CARAWAY, JJ.
NORRIS, Judge.
Johnny Joe was indicted for the second degree murder of James Hines in violation of La.R.S. 14:30.1. Joe was tried by a 12-member *589 jury and found guilty as charged. The District Court imposed the mandatory life sentence at hard labor without benefit of parole, probation or suspension. Joe now appeals his conviction, alleging seven assignments of error. For the reasons expressed, we affirm.

Factual Background
On September 3, 1994, Johnny Joe (defendant) went to the repair shop of James Hines (victim) to retrieve his pickup truck which the victim was repairing. The two men argued about the amount of money Joe should pay at that time. Joe pulled a gun and pointed it at Hines. Joe then left the shop and Hines called the police. Deputy Travis Ables responded to the call and after being told what happened at the Hines shop, he proceeded to Joe's residence. Deputy Ables told Joe he should borrow the money to pay for the truck and he would have Hines bring the truck to the Jackson courthouse/sheriff's office. Joe agreed to arrive at the sheriff's office between 12:30 and 12:40 p.m. Deputy Ables also told him not to return to the victim's shop. Deputy Ables returned to the victim's shop and left a message with another mechanic for Hines to bring the truck to the sheriff's office along with a receipt for the work performed and the money to be received.
Joe reported to the sheriff's office and waited approximately 20-25 minutes. When Hines did not arrive with the truck, Deputy Ables suggested the defendant return to his home and he would be called when the truck arrived.
At 1:08 p.m. the Jackson Parish sheriff's office received a 911-emergency call stating shots had been fired at the James Hines shop. When deputies arrived at the shop, Joe was outside the building sitting on a car with a gun in his waistband. Inside the building, the deputies found paramedics working on the victim, who died on the scene shortly thereafter. While still on the scene, Miranda warnings were read to the defendant, however, he continued to tell deputies that the victim "pushed him too far." While being transported to the sheriff's office, the defendant admitted shooting the victim three times. At trial, defendant contended that he shot Hines in self-defense. There was some corroboration for this argument; however, other evidence, both forensic and testimonial, refuted the theory of self-defense.

DISCUSSION: Challenge for Cause
By his second assignment of error, Joe urges the trial court erroneously granted a challenge for cause as to venireman Reginald Marsh. Defendant argues that Mr. Marsh was rehabilitated by defense counsel's questioning and based on his responses he could weigh the evidence fairly and impartially. The state contends the relationship between the defendant and the prospective juror was sufficient to challenge for cause.
Initially, a defendant does not have grounds to complain about the granting of a state's challenge for cause, unless the effect of the ruling is to allow the state to exercise more peremptory challenges than is allowed by law. State v. Fleeks, 26,270, (La.App.2d Cir. 3/1/95), 651 So.2d 370; La.C.Cr.P. art. 800 B. The record indicates that the state exercised only six of the 12 peremptory challenges allotted to it by law. C.Cr.P. art. 799; R. p. 6. Thus, the argument is without substance.
Even if the argument were properly before the court, Mr. Marsh stated that he was the first cousin of the defendant and he was also the third or fourth cousin of the victim. Mr. Marsh stated it would be very difficult for him to vote guilty, even if the state proved its case beyond a reasonable doubt. Additionally, Mr. Marsh stated that he attended family reunions and gatherings, and these functions would be "different" if he voted his cousin guilty. However, when questioned by defense counsel as to whether he could "call it just like it was," Mr. Marsh responded in the affirmative. Premised solely upon this response, defendant argues that Mr. Marsh was fully rehabilitated and the granting of a challenge for cause was clear error.
A prospective juror's statement that he will be fair and impartial is not binding on the trial court. A venireman which would normally be dismissed for cause, *590 may be rehabilitated if the court is satisfied that he can render an impartial verdict according to the evidence. State v. Broadway, 440 So.2d 828 (La.App.2d Cir.1983). However, a trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror or whether a prospective juror has been rehabilitated by questioning. Such determinations will not be disturbed unless a review of the voir dire as a whole indicates an abuse of discretion. State v. Bourque, 622 So.2d 198 (La.1993); State v. Fairley, 25,951 (La.App.2d. Cir.1994), 645 So.2d 213 (on rehearing) writs denied 94-1940 (La. 11/11/94), 645 So.2d 1152; 94-2909 (La. 3/24/95), 651 So.2d 287.
Other than the statement that he would "call it just like it was," Mr. Marsh indicated that he would find it difficult to judge his cousin. It is not necessary that the trial court rely exclusively upon Mr. Marsh's statement as proof that he would be a fair and impartial juror. Even when a prospective juror declares his ability to remain impartial, a challenge for cause should be granted if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to the law may be reasonably implied. State v. Tart, 93-0772 (La. 2/9/96), 672 So.2d 116; State v. Coates, 27,287 (La.App.2d Cir. 9/27/95), 661 So.2d 571, writ denied 95-2613 (La. 2/28/96), 668 So.2d 365.
Though Mr. Marsh may have indicated that he could weigh the evidence when questioned by defense counsel, the trial court concluded that the relationship between the defendant and Mr. Marsh was one where bias or prejudice would influence the prospective juror's decision. The trial court's decision should not be disturbed as a thorough examination of the record does not reveal an abuse of discretion.
This assignment lacks merit.

Peremptory challenges
By his third assignment, defendant asserts as error the trial court's denial of his Batson challenge. He argues that the State improperly used peremptory challenges to purposefully exclude prospective jurors solely on the basis of their race. La.C.Cr.P. art. 795; Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
In order to preserve the complaint that the state's use of a peremptory challenge was based solely on race, the defense must make an objection before the entire jury panel is sworn. State v. Williams, 524 So.2d 746 (La.1988); State v. Matthews, 26,550 (La.App.2d Cir. 1/19/95), 649 So.2d 1022, writ denied 95-0435 (La. 6/16/95), 655 So.2d 341. Here, the entire jury panel was sworn before the defendant raised his Batson objection. R. p. 364. Thus, the Batson challenge was untimely. However, in State v. Green, 94-0887 (La. 5/22/95), 655 So.2d 272, the court held that the state waived its right to complain by not contemporaneously objecting to the untimeliness of the defendant's Batson challenge. Here, the state has not assailed Joe's Batson challenge as untimely so we are bound to review it.
Batson held an equal protection violation occurs when a party exercises peremptory challenges to exclude prospective jurors solely on the basis of race. In that case, the Supreme Court adopted a three-step analysis to determine whether the constitutional rights of prospective jurors have been infringed by impermissible discriminatory practices:
First, the defendant must make a prima facie case showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

State v. Green, p. 23, 655 So.2d at 287 (emphasis added)
Under this analysis, if the defendant does not make a prima facie case of racial discrimination, then the Batson challenge fails and the state is not required to enunciate race-neutral reasons. Id. In determining whether the defendant has made a prima facie case, the trial court should consider *591 all relevant circumstances, including any pattern of strikes by the prosecutor against black jurors and any statements or actions of the prosecutor during voir dire which may support or refute an inference that the exercise of peremptory strikes was motivated by impermissible purposeful discrimination. State v. Tart, supra; State v. Fleeks, supra. The trial court's conclusion that a prima facie case has not been established is entitled to great deference. Batson, 476 U.S. at 98, n. 21, 106 S.Ct. at 1724, n. 21; State v. Fleeks, supra.
In the present case, defendant urges that the state's use of five peremptory challenges was purely discriminatory; at trial, however, he offered no facts or argument to substantiate the claim other than the bare allegation that five out of six peremptory challenges utilized by the state were against black panel members. The circumstances of this case reveal that both Johnny Joe and James Hines are black men.
In brief, defendant again alleges systematic exclusion of five prospective jurors by the state, but then readily concedes that the record on voir dire illumines acceptable race-neutral reasons for three of the state's five peremptory strikes. Br., 7. Defendant essentially argues before this court that the exclusion of prospective jurors Kenneth Ray Bailey and Bennie Jewell Dean substantiates a prima facie case under Batson. Yet the record also discloses that the defendant exercised peremptory challenges against both of these prospective jurors.
In addition, the record shows that Bailey knew both the defendant and the victim, and the victim was an old friend of Bailey's fatherthe same sort of reasons for which several other panel members were excluded. R.p. 220. Further, Bailey would not state for sure he would vote not guilty if he was not convinced of guilt beyond a reasonable doubt. R.p. 238. He also acknowledged knowing the defendant's younger son. R.p. 228. Mr. Dean's voir dire revealed he knew the defendant and considered himself a follower, not a leader. R.p. 210. Much of the content of this prospective juror's responses is recorded as "inaudible," but he said he had a son named Danny. R.p. 210. The state argues in brief that it had knowledge that this son had been arrested many times, although this information does not appear in the voir dire.
In denying defendant's motion, the trial court found no systematic exclusion based on race. Our own review of the record shows that the defendant acquiesced in three of his original five allegations of improper peremptory strikes, and did not lodge his Batson objection until after the whole jury was selected and sworn; these factors weigh against the defendant. See State v. Green, p. 27, 655 So.2d at 289, n. 23. This assignment amounts to no more than a pro forma objection, unsupported by any particular "statements or actions of the prosecutor" or "pattern of strikes by a prosecutor against members of a suspect class" with a specific jury panel which might support an inference of discriminatory purpose. State v. Tart, supra. The trial court did not err in its ruling.
We note the state did request the opportunity to place race-neutral reasons into the record, and the court indicated its intent to accept them; this is undoubtedly the better practice. However, the defendant objected, and the court appears not to have received any additional argument or offers of evidence on the issue. Nevertheless, in the absence of a prima facie case of systematic exclusion of jurors on account of their race, the burden never shifted and the state did not have to provide race-neutral reasons. State v. Green, supra. On the present record, we perceive no error. This assignment lacks merit.

Evidentiary Objections
By his fourth assignment, the defendant urges the trial court committed manifest error in overruling his objection to playing a copy of a video tape depicting the crime scene. Specifically, he argues that the original 8 mm tape of the crime scene made by the investigating deputy should have been played as it was available. The state contends the original 8 mm tape could not be played as it was not compatible with the courtroom equipment available, and the VHS video was an exact duplicate of the original.
*592 Pursuant to La.C.E. art. 1002, to prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided by this Code or other legislation. Article 1003 provides an exception to the general rule:
Art. 1003. Admissibility of duplicates
A duplicate is admissible to the same extent as an original unless: (1) A genuine question is raised as to the authenticity of the original; (2) In the circumstances it would be unfair to admit the duplicate in lieu of the original; or (3) The original is a testament offered for probate, a contract on which the claim or defense is based, or is otherwise closely related to a controlling issue.
In brief, the defendant does not raise the issue of the authenticity of the original 8 mm tape, but merely states that the original is required from a plain reading of La.C.E. art 1002. Defendant, however, fails to acknowledge the exception found in Article 1003.
At trial, neither the state nor the court was equipped to play the original tape in the 8 mm format to the jury. Deputy Travis Ables testified he made the original tape of the crime scene and that the original video was used to make the subsequent VHS video. Deputy Ables further testified that he reviewed the VHS copy and it was an exact duplication of the 8 mm original. The state offered both the 8 mm and the VHS videos as evidence. Overruling the objection of the defendant, the trial court admitted the VHS video and it was played for the jury.
Where the document offered in evidence is a mechanical reproduction of the original, and is its substantial equivalent, it is admissible unless the defendant can show that its content does not accurately reflect the original. State v. Vincent, 338 So.2d 1376 (La.1976); State v. Lewis, 567 So.2d 726 (La.App.2d Cir.1990), writ denied 575 So.2d 364 (La.1991). The defendant has made no showing or claim that the original video of the crime scene was not accurately depicted in the VHS version.
Absent further showing, defendant's argument that the original must be produced in accordance with La.C.E. art. 1002 fails. La. C.E. art. 1003 allows a duplicate admissible to the same extent as an original when there is no question as to the authenticity of the original and it would not be unfair to admit the duplicate in lieu of the original.
This assignment lacks merit.
By his fifth assignment, defendant argues that the trial court committed manifest error by overruling his hearsay objection to the reading of pleadings into evidence by Deputy Travis Ables. According to the state, "in the course of trial it became pertinent for the jury to know what the state had responded in answer to the defendant's application for bill of particulars." The defendant urges that the state allowed the witness, Deputy Ables, to read part of the record into evidence, and this constituted hearsay. The defendant also urges that the state gave the jury the impression that the exculpatory evidence provided was all that was available. The state contends the evidence was not hearsay as it was not being offered to prove the truth of the matter, but only to show that a response had been given.
On redirect, the state attempted to have Deputy Ables read into the record the state's responses to the application for bill of particulars. The defendant objected on the basis that the reading would constitute hearsay. The objection was overruled, and it is upon this basis that defendant now alleges error. Louisiana Code of Evidence art. 801 C defines hearsay:
"Hearsay" is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.
The state contends it was not offering the statement to prove that it was in fact true, but only to show a response had been given to the application for bill of particulars. If the statement was offered to prove the truth of the matter it would be inadmissible hearsay, then it would be necessary to determine the effect of the improper admission. However, a thorough review of the record indicates that the state's position has merit. If a statement is not introduced to prove the *593 truth of the matter asserted, then that statement, by definition, is not hearsay. State v. Tate, 25,765 (La.App. 2 Cir. 2/23/94), 632 So.2d 1213.
The statement read by the deputy is as follows:
The only exculpatory, or whatever, the only exculpatory information the state is aware of are, or are the statements reflected in the supplemental answer to the application for the bill of (Defense counsel raises an objection). R.p. 537.
The reports of the laboratory employees previously filed into evidence herein, in a statement by the crime lab personnel that the lab did not detect any gun powder residue on the shirt of James Hines. The autopsy report also contains what could be construed as exculpatory or whatever, evidence and copy of the autopsy report has been furnished to the counsel for the defendant. R.p. 538.
This information only states what was given to the defense in response to the application for bill of particulars. Much of this information corroborates the testimony of the state's witness, Dr. Brenda Reames, and the lab report admitted into evidence by the state. Therefore, by definition, the statement in question is not hearsay and likewise admissible.
However, assuming arguendo the statement is inadmissible hearsay, it is merely cumulative or corroborative. Inadmissible evidence which is merely cumulative or corroborative of other testimony adduced at trial is considered harmless. State v. Moseley, 587 So.2d 46 (La.App.2d Cir.), writ denied 589 So.2d 1066 (1991).
The defendant fails to show prejudice caused by admitting this statement. This assignment lacks merit.
By his sixth assignment, defendant urges the trial court erred in sustaining the state's objection to questions by defense counsel about the remarks of a state witness regarding the theft of her sister's car.
On direct examination by the state, Thelma Jackson (the defendant's common-law wife) testified she was in the victim's office and they were arguing. Ms. Jackson stated, "I told him, I said you stole my sister's car, I said so I guess you're trying to steal the damn truck, you rotten son of a b____." Ms. Jackson testified that after she said this, Hines jumped up from his chair and grabbed his gun from the desk. On cross-examination, the defendant asked Ms. Jackson to elaborate on this testimony. The state objected to the relevancy of the requested testimony; a lengthy discussion ensued. The defendant contended that exploring the statement would be necessary to show the character of the victim in conformity with La.C.E. art. 404. The court found the defendant had presented evidence of a hostile demonstration on the part of the victim, but ruled that the defendant's question about the sister's car was irrelevant. The defendant objected to the court's ruling, complaining that his cross-examination was being limited. On appeal, defendant has again urged, without elaboration, that his right of cross-examination was improperly abridged. He asserts, however, no specific grounds beyond the bare contention. Cross-examination is not without limitations; all testimony, to be admissible at trial, must be relevant. Relevant evidence is defined as that which has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La.C.E. art. 401. The determination whether tendered evidence is relevant, and thus whether it is a proper matter for cross-examination, lies within the discretion of the trial court. The court's rulings will not be disturbed in the absence of an abuse of discretion. State v. Lard, 568 So.2d 629 (La. App. 2 Cir.1990). The defendant has not shown us any error in the court's ruling on relevancy, and we perceive none.
We also perceive no error in the court's application of art. 404. It does not appear by this attempted cross-examination that the defendant was trying to show dangerous character of the victim, under art. 404(A)(2)(a); or show that the victim made prior threats against the accused, or show the accused's state of mind as to the victim's dangerous character under art. 404 B(1). *594 See State v. Flowers, 574 So.2d 448 (La. App.2d Cir.), writ denied 580 So.2d 666 (1991).
This assignment lacks merit.

Brady Material
By his first assignment of error, defendant contends the trial court committed manifest error by denying his Motion to Quash the indictment on the grounds that the statement of Barbara Campbell was not provided to him until immediately before trial. On March 23, 1995, before Barbara Campbell testified, the state informed defendant that it had just found out Ms. Campbell's testimony would differ slightly from her previous statement to the police. After reviewing her statement, she indicated that it contained information that was different from her present recollection. Specifically, she previously indicated that Joe put the gun in his back pocket; and at trial believed that the gun was actually placed in the back of his pants. Therefore, out of an abundance of caution, the state brought these inconsistencies to the attention of defense counsel and provided the defendant with a copy of the document. When defense counsel reviewed the statement, he indicated that it also included a statement that Ms. Campbell heard the defendant say he did not intend to kill the victim.
Defendant argues that this statement was exculpatory and failure to provide it until trial constituted a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Premised on this, the defendant moved for a mistrial which was denied. Defendant then urged a Motion to Quash which the court also denied.
When the defendant requests it, the state must produce evidence that is favorable to the accused, if that evidence is material to guilt or innocence. Id. The Brady rule also applies to evidence which impeaches the testimony of a witness when the credibility of that witness may be determinative of guilt or innocence. State v. Barker, 628 So.2d 168 (La.App.2d Cir.1993), writ denied 93-3194 (La. 3/25/94), 635 So.2d 236.
Here, defendant was given the statement in question and the court adjourned until the following day. Defendant had a day to review the statement and when the trial resumed, he cross-examined Ms. Campbell extensively on the statement. Also, during cross-examination Ms. Campbell did not refute the fact that she heard defendant say he did not intend to kill the victim shortly after the incident. The only discrepancy between the statement and her testimony at trial involved her recollection of defendant's placement of the gun in his pants.
The record indicates that defendant was provided the substance of the statement in the Supplemental Answer to the Bill of Particulars. R. p. 88. Since he already knew of the existence of the statement, defendant can not claim to have been prejudiced by the state's failure to disclose the statement of this particular witness. State v. Cass, 356 So.2d 936 (La.1977); State v. Taylor, 553 So.2d 873 (La.App. 1st Cir.1989), writ denied 558 So.2d 600 (1990). Defendant was given an opportunity to review the statement and subsequently cross-examined Ms. Campbell at trial on the statement. On appeal, defendant sets forth no argument as to how he was prejudiced by the state's failure to disclose this information before trial.
Although defendant argues prejudice and a violation of Brady, based on the particular facts of this case and a thorough review of the record, we find no prejudice.
This assignment of error is without merit.
By his seventh assignment of error, defendant urges that the court committed manifest error by denying his Motion for Mistrial when the state failed to produce prior inconsistent statements of its witnesses. This assignment of error pertains to statements given by state's witnesses regarding the number of shots heard at the crime scene. Defendant specifically alleges that state witness Barbara Campbell previously stated she heard four shots fired while the state maintained that six shots were fired. Defendant asserts state's failure to provide such inconsistent statements prior to trial deprived him of his constitutional right to effectively confront and cross-examine state's witnesses. *595 The state contends the defendant knew of the inconsistencies as they were contained in the police report and witness statements which the state provided as part of discovery.
The information regarding what each witness stated as to the order and number of shots was contained in the police report and in the statements of Marcus Joe and Thelma Jackson. The statements and police report were provided by the state as part of discovery. Additionally, at trial the defendant was able to show inconsistencies between trial testimony and the forensic evidence pertaining to the number of shots fired.
In State v. Williams, 617 So.2d 557 (La. App. 3 Cir.1993), writ denied 623 So.2d 1331, the court held that variations in the descriptions of the shooting as given by four witnesses did not represent material or exculpatory evidence, but were simply factors going to the weight of the evidence.
Here, the defendant was aware of the inconsistencies between the witnesses' statements regarding the number of shots heard and there is no indication that their testimony at trial differed from the previous statements on this matter. Thus, the statements could not have been used to impeach the individual witnesses. Such a variance goes merely to the weight of the evidence and would not change the outcome of the proceeding. The defendant cannot claim to have been prejudiced by the state's failure to disclose information which was known by defendant prior to trial. State v. Cass, supra. The defendant has failed to show any prejudice as a result of the state's failure to disclose the entirety of the witnesses' statements. The defendant has also failed to show that disclosure of the witnesses' statements, in their entirety, would have changed the outcome of the proceedings.
This assignment lacks merit.

Conclusion
For the reasons expressed, the conviction of Johnny Joe is AFFIRMED.