670 So.2d 1349 (1996)
STATE of Louisiana, Appellee,
v.
Sedric C. HAMPTON, Billy Gene Abney and Bobby L. Perry, Appellants.
No. 27703-KA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1996.
Rehearing Denied March 28, 1996.
*1351 Bobby L. Culpepper, Monroe, for Appellants.
Richard Ieyoub, Attorney General, Walter E. May, Jr., District Attorney, for Appellee.
Before HIGHTOWER, BROWN and GASKINS, JJ.
BROWN, Judge.
A jury convicted defendants, Sedric Hampton, Billy Abney and Bobby Perry, of three counts of theft of over $500, LSA-R.S. 14:67. The trial court sentenced defendant Hampton to two years at hard labor on each count to run concurrently. Defendants Abney and Perry were given suspended sentences of two years at hard labor and were placed on supervised probation for three years. Defendants appeal their convictions. For the reasons set forth below, we affirm.

FACTS
Defendant, Sedric Hampton, owns Sedric's Phillips 66 Service Station in Arcadia, Louisiana. Defendants, Billy Abney and Bobby Perry, were employed as mechanics at Sedric's. The convictions involved the fraudulent billing and collection of money for repairs authorized but not performed on three school buses owned by the Bienville Parish School Board that were brought to Sedric's in May, June and July of 1992.
*1352 In count one, the state claimed that defendants billed and collected from the school board $3,100 for the installation of a new heavy duty engine in a 1972 Ford bus, when, in fact, a rebuilt short or long block was actually installed. According to the state's expert witness, the installation of a long block would cost at the most $2,000.
Count two involved a 1973 Chevrolet bus. The state claimed that defendants billed and were paid for the following parts and work that was not done:
(1) a new heavy duty engine;
(2) two fuel filters;
(3) four wheel bearings replaced;
(4) radiator core replaced;
(5) U-joint replaced;
(6) rear end seal replaced;
(7) four shock absorbers;
(8) front brake shoes;
(9) complete brake cylinder set;
(10) heavy duty battery;
(11) transmission supports;
(12) grease seals;
(13) brake drums turned;
(14) flywheel replaced;
(15) four lug nuts replaced.
The bill submitted for parts and labor to the 1973 bus was $9,290. Of that amount, $4,591.53 was for parts allegedly not furnished. The labor charges of $1,500 were not itemized.
In count three, the state alleged that the following repairs were invoiced but not actually completed on a 1974 Ford bus:
(1) new engine;
(2) four wheel bearings replaced;
(3) grease seals;
(4) rebuilt carburetor;
(5) flywheel;
(6) power steering system overhauled;
(7) four drums turned.
The total bill for repairs to this bus was $10,998.56. The amount charged for parts for the repairs allegedly not made was $3,473.20. Again, the labor charges of $1,800 were not itemized.
On the other hand, defendants claimed the charges submitted to and paid by the school board were for parts actually used and work actually performed. Defendants deny that the school board was overcharged for any of the repairs.

DISCUSSION
Defendants have assigned 104 errors.[1] We will first address those assignments directed at the sufficiency of the evidence. See State v. Hearold, 603 So.2d 731 (La.1992). Assignments of Error Nos. 101-103: Denial of motions for new trial and post-judgment verdict of acquittal.
Defendants assert that there was insufficient evidence to support their convictions of theft and that a new trial should have been granted because of jury misconduct. Defendants also assert that the trial court erred in refusing to allow a member of the jury to be called as a witness at the hearing on the motion for a new trial.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing all of the submitted evidence, including that later found on appeal to be inadmissible, in the light most favorable to the prosecution, any rational juror could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Hearold, supra; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir. 1992), writ denied, 605 So.2d 1089 (La.1992).
This standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict by viewing that evidence in the light most favorable to the prosecution. When the evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the *1353 crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
Theft is defined as the misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential. LSA-R.S. 14:67. All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals to that crime. LSA-R.S. 14:24.
Regarding the 1972 Ford bus, the only repair allegedly not performed was the installation of a new heavy duty engine. Michael Smudrick, an expert mechanic in internal combustion engines, testified that he inspected the bus and concluded that the engine was not a new heavy duty engine, but rather a rebuilt engine. Smudrick testified that a rebuilt engine would cost between $1,000 and $2,000 for parts and labor and that the $3,100 charged by Sedric's Service Station was unjustified. The state presented neither video nor photographic evidence of this bus.
With regard to the 1973 Chevrolet bus, the state presented testimony and introduced into evidence pictures and a videotape showing that the repairs on the invoice from Sedric's were not done. Troy Scallion, an expert in general automotive mechanics, examined the bus at the request of Larry Knotts, a member of the Bienville Parish School Board. Eight exhibits show the engine in the bus which was supposedly a new heavy duty engine. Scallion testified that the engine in the bus was not new, although it could have been a rebuilt engine, also known as a short block. The photographs show a dented valve cover with a different color of paint, a cylinder color of paint, a cylinder wall with ridges from excessive wear and a burnt spot, and a rusty water pump. Also, one of the pictures shows exhaust smoke coming from the tail pipe of the bus, indicating that the engine was not new.
Exhibits P-2-10 are pictures of the bus's front two wheels and wheel well area. Defendants charged the school board for replacing the wheel bearings, brake shoes and brake cylinders and turning the wheel drums. Scallion testified that this work was not done. He pointed out excessive rust on the spindle and on the wheel bearing, ridges in the wheel drum indicating excessive wear and rusty brake fluid in the brake cylinder. Scallion testified that the right wheel bearing was spinning on the spindle and concluded that this wheel bearing had not been replaced.
Scallion stated that he had trouble getting the right front wheel off because one of the nuts was stripped. He then concluded that this wheel had not been removed in more than two years. Scallion also testified that the left front wheel was not as bad as the right front wheel. Scallion's testimony is consistent with William Britt's statement that work had been done on the left front wheel about six months before the bus was brought to defendants for repairs.
Scallion also stated that the shock absorbers on the bus were not new. According to the state, these shocks were removed, painted, then put back on the bus by defendants. Exhibit P-12 shows a new shock compared to a shock found on the bus. Exhibits P-13-15 show the old shocks with rusted and pitted areas. Exhibit P-16 shows paint on the rubber seal.
The state also presented a videotape of this bus showing the repairs that were done and those that were not completed. Scallion explained what the videotape depicted as it was played for the jury.
With regard to the 1974 Ford bus, the state introduced into evidence the invoice submitted by defendants, pictures and a videotape of the bus. Scallion testified that between one-third to one-half of the repairs charged for were not made. Specifically, Scallion pointed out old, rusty grease on the wheel bearings, a wheel drum with ridges and old grease on the brake cylinder. Scallion stated that he inspected the engine and determined that it was a rebuilt engine rather than a new one. During the playing of *1354 the videotape, Scallion explained to the jury the repairs that were billed for but not made.
Defendants argue that the state did not prove that they had the intent to permanently deprive the school board of anything. Defendants urge that all of the repairs were approved by Ray Robinson, Bienville Parish School Board's transportation director. Defendants also assert that none of the buses were returned to Sedric's after it was determined that the work was unsatisfactory; thus, they were not given a chance to correct the problems. Finally, defendants argue that there was insufficient evidence for the jury to conclude that the theft was in excess of $500.
First, defendants' argument that the school board consented to paying for repairs that were not actually done has no merit. Robinson gave his consent for the repairs to be completed; he did not give his approval for defendants to charge the school board for repairs not actually made. We also find without merit defendants' argument that they were not given an opportunity to fix the problems. That defendants would have corrected the problems or refunded the school board the money paid for the repairs does not change the fact that an act of fraud was committed. This is tantamount to an argument that a thief is not guilty if he returns the property. The return of the property stolen does not erase the fact that the property was originally taken without the owner's consent. Finally, there was sufficient evidence from which the jury could have determined the value of the fraud perpetrated upon the school board. The state submitted invoices listing the charges for parts which were not replaced and for repairs which were not done. Furthermore, the state produced expert testimony concerning the amount normally charged for the installation of rebuilt and new engines.
Defendant Sedric Hampton, as owner of Sedric's Phillips 66 Service Station, obtained the contract for the work, submitted the bill and collected the money.
Defendants Abney and Perry argue that they were neither involved in the fraudulent invoicing nor did they receive any payment and thus, could not have been found guilty of theft. Defendant Hampton testified that Abney and Perry worked on the three buses because he could not fit under the buses at that time. Abney and Perry both gave statements in which they asserted that all of the work invoiced was completed. Both also maintained that all of the work was done even when shown evidence which revealed that the repairs were not in fact completed.
This court's authority to review questions of fact in a criminal case is limited to the Jackson v. Virginia sufficiency of the evidence evaluation and does not extend to credibility determinations made by the trier of fact. LSA-Const., Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La. App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
The jury obviously chose to believe the state's witnesses rather than defendants and their witnesses. The state produced sufficient evidence for the jury to conclude that defendant, Sedric Hampton, charged the school board for repairs not completed on the buses and thus committed theft by fraudulent conduct and misrepresentations.
Although the state produced no evidence that showed that defendants Abney and Perry participated in creating the invoices, the state did present sufficient evidence to show that these defendants were principals to the fraud. The jury could have reasonably concluded that Abney and Perry were misrepresenting the facts in their statements. Intentional misrepresentations raise the inference of a guilty mind or wrongdoing, just as flight immediately following an offense is an indication of guilt. State v. Davenport, 445 So.2d 1190 (La.1984).
Furthermore, Allen Strain testified that while he was an employee at Sedric's, he overheard these two defendants laughing about how they were putting a new engine purchased for a school bus in Hampton's personal truck. This testimony indicates that Abney and Perry were aware of the *1355 fraud being perpetrated by Hampton and that they actively participated in this fraud. Thus, a reasonable juror could have found Billy Abney and Bobby Perry guilty as charged.
Also in this assignment of error, defendants argue that the trial court erred in refusing to allow the testimony of a juror at the hearing on the motion for a new trial. Defendants alleged in their motion that there was substantial jury misconduct. According to defendants, "it was brought to the attention of the members of the jury certain alleged facts concerning a prior conviction of defendant Hampton, which facts were not in evidence." At the hearing on the motion for a new trial, defendants attempted to call one of the jurors to testify. The state objected and argued that defendants had failed to allege sufficient particular instances of jury misconduct. The trial court sustained the state's objection and denied the motion for new trial. On appeal, defendants argue that the trial court's decision was erroneous and violative of LSA-C.E. Article 606(B), which provides:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question of whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury's attention. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
The prohibition contained in this article, previously set forth in LSA-R.S. 15:470, is intended to preserve the finality of jury verdicts and the confidentiality of discussions among jurors. State v. Harris, 597 So.2d 163 (La.App.2d Cir.1992). Only well-pleaded allegations of prejudicial misconduct violating a defendant's constitutional rights will require an evidentiary hearing at which a juror may testify. Mere conclusory statements devoid of any specificity are insufficient. State v. Harris, supra.
Defendants' allegations are not sufficiently particular to justify such testimony. Further, defendants did not allege any particular facts at the hearing. At trial, during direct examination, Hampton admitted his prior conviction of theft. The jury was thus aware of this conviction, though not of its particular facts. Defendants failed to allege what facts concerning Hampton's prior conviction the jury was exposed to or how they were exposed to them. Further, defendants have failed to allege or show any actual prejudice.
The decision on a motion for new trial rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent a clear showing of abuse. State v. Harris, supra. As noted above, the state presented sufficient evidence to sustain the convictions and the trial court did not abuse its discretion in refusing to allow defendants to call a juror as a witness at the hearing. These assignments of error are without merit.

Assignments of Error Nos. 1, 3, 4 and 5: Prieur notice and hearing.
The state is required to give pre-trial notice of its intent to use evidence of other crimes. State v. Prieur, 277 So.2d 126 (La.1973). Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. McDermitt, 406 So.2d 195 (La.1981); State v. Outley, 629 So.2d 1243 (La.App. 2d Cir.1993), writ denied, 94-0410 (La. 05/20/94), 637 So.2d 476. However, LSA-C.E. Article 404(B) provides:
Except as provided in Article 412, evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, *1356 plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The state filed its first Prieur notice on June 8, 1994, informing defendants of its intent to introduce evidence regarding two incidents of alleged fraudulent billing for repairs to school buses owned by Carol Jinks (Subpart A) and Willie Guin (Subpart B). The state filed its first supplemental notice on June 15, 1994, setting forth its intent to introduce evidence of defendant Hampton's previous theft conviction (Subpart C). The second supplemental notice, filed on June 20, 1994, the first day of trial, informed defendants of the state's intent to introduce testimony from Allen Strain (Subpart D) and evidence relating to the revocation of defendant Hampton's vehicle inspection license in 1987 (Subpart E).
The trial court ruled that the evidence referred to in Subparts A and B was admissible to prove intent. With regard to Subpart C, which dealt with Hampton's prior conviction of theft, the court ruled that this could not be used as evidence of other crimes, although it could be used for impeachment purposes. We note that the state did not introduce evidence of this prior conviction; Hampton himself admitted this conviction during direct examination.
The trial court ruled that Subpart D (Strain's testimony) did not refer to other crimes; instead, it was evidence of the crimes charged and thus could be admitted. However, the court also ruled that Subpart E (revocation of inspection license) would not be allowed.
Defendants argue that the two supplemental Prieur notices were untimely and were not sufficiently specific; however, the court excluded use of the acts set forth in those notices except as to Subpart D, the testimony by Allen Strain. Thus, defendants cannot show any prejudice with regard to the untimeliness of the two supplemental notices or the alleged lack of specificity.
Defendants' argue that the state failed to produce clear and convincing evidence at the Prieur hearing that the acts claimed by Allen Strain occurred. The trial court, however, found that Strain's testimony related to the crimes charged. Strain's testimony claimed that defendants Abney and Perry told him during this time period that they put an engine paid for by the school board in Sedric Hampton's truck. We agree with the trial court's assessment that the state did not have to present clear and convincing evidence at a Prieur hearing that these acts occurred.
Defendants also argue that the acts admitted under Subparts A, B and D should not have been allowed to show a specific intent because this was a general intent crime. Defendants offer no support for this argument. The fact that theft is a general intent crime is irrelevant. Defendants' main defense throughout the course of the trial was that they did not intend to defraud the school board. The other incidents of fraudulent billing were relevant to counter this defense and to show defendants' intent to commit fraud. The testimony of Strain was relevant to show Abney's and Perry's complicity in the crimes.
These assignments of error are without merit.

Assignment of Error No. 2: Batson challenge.
In this assignment of error, defendants allege that the trial court erred in denying their timely Batson challenge. According to defendants, the state failed to rebut a prima facie showing of racial discrimination in the state's exercise of peremptory challenges.
The race of a juror can not be the sole basis of a decision to exercise a peremptory challenge. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); LSA-C.Cr.P. Art. 795; State v. Fleeks, 26,720 (La.App. 2d Cir. 03/01/95), 651 So.2d 370. When a defendant objects that the prosecutor exercised a peremptory challenge in a racially biased manner, defendant *1357 must establish a prima facie case of purposeful discrimination. To establish a prima facie case under Batson, defendant must show that he is a member of a cognizable racial group and that the state has exercised peremptory challenges to remove members of his race from the petit jury. State v. Thompson, 516 So.2d 349 (La.1987), cert. denied, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988). However, see Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). If defendant makes a prima facie showing, the burden then shifts to the state to come forward with race neutral explanations for exercising the peremptory challenges. State v. Collier, 553 So.2d 815 (La. 1989); State v. Hamilton, 594 So.2d 1376 (La.App. 2d Cir.1992).
In this case, both the state and defense had six peremptory challenges for each defendant, a total of 18 per side. LSA-C.Cr.P. Art. 799. The trial court did not state how many peremptory challenges were granted to each side for the selection of alternate jurors. Obviously, each side had at least three because both the state and the defense exercised 21 challenges without complaint.
The state exercised 19 of its 21 peremptory challenges to exclude black potential jurors. The final jury consisted of two blacks and four whites; the two alternates were also white. All three of the defendants are black. This was sufficient to establish a prima facie case of purposeful discrimination and the trial court required the prosecutor to state his reasons for exercising the peremptory challenges. After hearing the rationale for the use of each peremptory challenge, the court found that there was no systematic exclusion based on race by the state.
On appeal, the defense argues that while the prosecutor excluded all of the black members who knew the defendants, he did not exclude one white male, Raymond Teasley, who also knew defendant Hampton. During voir dire, neither attorney questioned Teasley about the extent of his relationship with Hampton. We also note that the prosecutor excluded two other white prospective jurors because they knew or lived in the same community as the defendants.
Defendants' argument regarding Teasley's acceptance by the state is not a valid Batson argument; under Batson, the focus is on the exclusion of jurors based on race. A party is not required to state race neutral reasons for the acceptance of a juror. Defendants' argument, however, can be interpreted as urging that knowledge of the defendants was not the real reason for the state's exclusion of black jurors. Under these circumstances, the acceptance of Teasley as a juror does not support such a conclusion. The fact that a prospective juror knows the defendant has been held to be a race neutral reason for his or her exclusion. See State v. Henderson, 571 So.2d 770 (La. App. 2d Cir.1990).
In addition, we note that the final jury panel was comprised of two black and four white members. Assuming, as would a prosecutor seeking to discriminate, that the jurors would vote as a racial block, a conviction could not be obtained with the jury chosen because a unanimous vote of six was needed to convict defendants of theft. See State v. Fleeks, supra; State v. Hamilton, supra.
Defendants do not challenge any particular exclusion by the state. We note that the trial court found that the prosecutor stated racially neutral reasons for all but three of the excluded jurors; Mary Weathers, Miriam Chase and Bessie Cooper. As to these three jurors, the prosecutor stated additional reasons. The court ultimately found no systematic exclusion by either the state or defendants, although both sides were unable to adequately account for three of their peremptory exclusions.[2]
The trial court's determination regarding whether a systematic exclusion has occurred is based on credibility evaluations and is thus entitled to great deference. State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992). We will not disturb the trial court's determination in this case.
This assignment of error is without merit.
*1358 The remaining assignments of error concern evidentiary rulings within the trial court's discretion and are without merit. They are discussed in the unpublished appendix to this opinion.

CONCLUSION
For the reasons set forth above, defendants' convictions are AFFIRMED.

APPLICATION FOR REHEARING
Before HIGHTOWER, BROWN, WILLIAMS and GASKINS, JJ., and CLARK, J. Pro Tem.
Rehearing denied.
NOTES
[1] However, eighteen of the assignments of error were neither briefed nor argued. Therefore, these assignments are considered abandoned and will not be addressed on appeal.
[2] The state also made a Batson objection, alleging that defendants were systematically excluding white prospective jurors. Defendants exercised all 21 of their challenges against white prospective jurors. However, the trial court's ruling on this objection is not an issue on appeal.