953 So.2d 979 (2007)
STATE of Louisiana, Appellee
v.
Michael Kevin HAILEY, Appellant.
No. 41,897-KA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 2007.
Rehearing Denied March 29, 2007.
*981 Anita D. McKeithen, Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, Dale G. Cox, William J. Edwards, Jonathan Thompson, Assistant District Attorneys, for Appellee.
Before BROWN, WILLIAMS, and SEXTON (Pro Tempore), JJ.
BROWN, Chief Judge.
Defendant, Michael Kevin Hailey, was tried and convicted of the attempted second degree murder of Jeremy Craig and sentenced as a fourth felony habitual offender to 87 years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Defendant now appeals, urging three assignments of error. For the reasons set forth below, defendant's conviction and sentence are affirmed.

Discussion
Sufficiency of the Evidence
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.02/28/96), 668 So.2d 1132.
To be guilty of attempted murder, a defendant must have the specific intent to kill; the mere intent to inflict great bodily harm is insufficient to convict a defendant of attempted first or second degree murder. State v. Davis, 41,245 (La. App. 2d Cir.08/09/06), 937 So.2d 5; State v. Mitchell, 39,305 (La.App. 2d Cir.02/17/05), 894 So.2d 1240, writ denied, 05-0741 (La.06/03/05), 903 So.2d 457.
Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the proscribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. Ellis, 28,282 (La.App. 2d Cir.06/26/96), 677 So.2d 617, writ denied, 96-1991 (La.02/21/97), 688 So.2d 521.
*982 The determination of whether the requisite intent is present in a criminal case is for the trier of fact. It is for the factfinder to weigh the credibility of the witnesses and a reviewing court should not second guess those determinations. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975); State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988).
The incident occurred close to 2:00 a.m. on March 28, 2004, in the parking lot at Tony's Hilltop Bar in Vivian, Louisiana. The victim, Jeremy Craig, testified that he, his wife, Shannon, and a few of their friends were in the bar relaxing. Also at the bar were defendant, Michael Hailey, his brother, Chad Weaver, their mother, Kathy Weaver, and Chad's girlfriend, Donna Williamson. Neither Craig nor any of his friends were acquainted with defendant, a resident of Atlanta, Texas, prior to this incident.
Defendant got into an argument with a man named Rodney and they went outside and fought. The owner of the bar, Tony Gardner, went outside to monitor the situation, and, according to Jeremy Craig, a female bartender asked him to go outside and help the bar owner. The fight between defendant and Rodney stopped soon thereafter, and defendant and his brother, Chad Weaver, got into their car to leave. However, another bar patron known as "Scooby" reached into the vehicle and slapped Chad. At that point, defendant and Chad got out of the car to fight with Scooby.
In an effort to break up the fight, several patrons grabbed Scooby while Jeremy Craig grabbed Chad. Craig described what happened next:
I was holding Chad back. I just turned around. I seen his brother [the defendant] heading my way. I took my eyes back off of him and looked back that way. You know, the second time I looked around, I seen him swinging at me. . . . I tried to dodge away from him. . . . That's when I noticed I was cut. . . . [on] my right arm. . . . It felt like somebody had thrown a drink on me. I felt my arm go numb, and I looked down and blood was shooting out . . . of my arm.
Craig's friend, Angela Polite, and another witness, Teresa Rogers, testified that Craig had been trying to break up the fight between Chad and Scooby when they saw that defendant had something in his hand. They saw defendant pick Craig up then slam him to the ground. Ms. Polite saw blood "gushing" or "spurting" out of Craig's arm "like somebody had turned on a faucet." Afterwards, Ms. Polite saw defendant wipe his hands down the front of his pants before putting them both in his pockets. Ms. Rogers described defendant's look as "raging" or "cold."
After Gardner pulled defendant off of Craig, a volunteer fireman arrived and began caring for the victim. Shortly thereafter, Caddo Parish Sheriff's Office ("CPSO") Deputy Eric Lawrence arrived. When Dy. Lawrence saw how badly Craig was injured, the deputy called for the air ambulance. Craig was flown to LSU Medical Center by helicopter ambulance.
Detective Stacy Cowgill interviewed defendant the day after the incident. According to defendant, he threw the first punch at Jeremy Craig but said that it was done in self-defense. Defendant admitted that he slammed Craig to the ground, but denied stabbing him. According to defendant, he did not even have a knife. Defendant stated that at the time of his confrontation with Craig, his brother Chad was fighting with two or three other people. Defendant's mother came into the CPSO the next day and told Detective Cowgill that Jeremy Craig had stabbed her son Chad, so Chad must have been the *983 one who stabbed Jeremy. According to Ms. Weaver, Dy. Cowgill had arrested the wrong person and if anyone should have been arrested, it was Chad.
Both Craig and Angela Polite identified defendant at trial as the man who had cut and stabbed Craig. Teresa Rogers was not able to positively identify defendant. Ms. Rogers said that defendant resembled the Kevin Hailey that she knew.
Defendant's only witness, Russell Green, who was a friend of defendant's father, testified that he was running the karaoke machine at Tony's Hilltop Bar the night of the altercation and witnessed part of the fight between Craig and defendant. Green stated that he helped break up the fight. He said that he helped pull defendant out of the fight, and when he did so, defendant basically "pulled back" and stopped fighting. Green testified that he did not see defendant with a knife.
The victim, Jeremy Craig, testified that he was able to move or dodge out of the way of the first blow that defendant struck with his knife. This first and strongest blow was a thrust, rather than a slash, and was directed toward the victim's chest. Apparently because the victim was able to move, defendant only struck the victim's elbow rather than a more vital location. However, witnesses graphically described the gushing flow of blood caused by this injury, saying that blood was "shooting" or "spurting" from the wound. Even so, defendant pressed his attack, and at one point picked the victim up by the throat and slammed him down onto the concrete. Further, the victim's bloody shirt had five lacerations and the victim suffered other cut wounds to his chest; this demonstrates the sustained efforts of defendant to cut the victim in a vital area.
Defendant might well have been facing a second-degree murder charge rather than an attempted-murder charge but for the fact that others on the scene broke off defendant's attack and the victim was transported by air ambulance to the hospital.
Also in this assignment of error, defendant challenges the evidence that he was correctly identified as the perpetrator of the offense. In State v. Hughes, 05-0992 (La.11/29/06), 943 So.2d 1047, 1051,[1] the supreme court observed:
[W]hen the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. Positive identification by only one witness is sufficient to support a conviction. It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations.
(Citations omitted.) Although there were some discrepancies between various witnesses' descriptions of defendant's clothing and hairstyle, there was no testimony that the victim fought with or was harmed by any person other than defendant. Indeed, the witnesses unanimously identified defendant as the person with whom the victim was fighting when he sustained the serious stab wound to his arm. There was no substantial question that defendant and not his brother Chad or any other person was the perpetrator of this offense.
This assigned error is without merit.
Denial of Post-trial Motions
On appeal, defendant repeats the arguments he raised in each of his three motions for a new trial in the district court.
*984 Communication by Juror
The first motion for new trial was based upon a conversation that defendant's attorney had with one of the jurors after the conclusion of the trial. According to counsel, the juror, Troy Trussell, approached defendant's attorney at a party a few days after the trial. Defense counsel told the court that when counsel asked the juror how the jury found specific intent to kill, the juror responded, "We didn't, we went on the great bodily harm part." Further, the juror told counsel that, "We told (the two dissenting jurors who wanted to vote for attempted manslaughter) that if he had just hit him once, it would have been manslaughter, but because he kept hitting him it couldn't be attempted manslaughter." Counsel for defendant did not subpoena the juror to testify nor was there a proffer of an affidavit from the juror.
Louisiana Code of Evidence article 606(B) provides:
Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury's attention. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
This article is closely related, at least in criminal cases, to Federal Rule of Evidence 606. See the extended discussion of the history of that rule in Tanner v. U.S., 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). Jurors may not testify with regard to their mental processes in connection with their verdict. State v. Marshall, 04-3139 (La.11/29/06), 943 So.2d 362. There is no allegation that "extraneous prejudicial information" played a part in the jury's deliberations. Compare State v. Horne, 28,327 (La.App. 2d Cir.08/21/96), 679 So.2d 953, writ denied, 96-2345 (La.02/21/97), 688 So.2d 521.
As this court stated in State v. Wilhite, 40,539 (La.App. 2d Cir.12/30/05), 917 So.2d 1252, at 1261-62, writ denied sub nom State ex rel. Wilhite v. State, 06-1078 (La.11/09/06), 941 So.2d 35:
The prohibition contained in this article, previously set forth in La. R.S. 15:470, is intended to preserve the finality of jury verdicts and the confidentiality of discussions among jurors. State v. Hampton, 27,703 (La.App. 2d Cir.02/28/96), 670 So.2d 1349, writ denied, 96-1063 (La.11/15/96), 682 So.2d 758. Only well-pleaded allegations of prejudicial misconduct violating a defendant's constitutional rights will require an evidentiary hearing at which a juror may testify. Mere conclusory statements devoid of any specificity are insufficient. State v. Hampton, supra.

Juror misconduct is not grounds for an automatic mistrial; prejudice must also be established. State v. Day, 414 So.2d 349 (La.1982); State v. Richardson, 33,272 (La.App. 2d Cir.11/01/00), 779 So.2d 771, writ denied, 00-3295 (La.10/26/01), 799 So.2d 1151.
The decision on a motion for new trial rests within the sound discretion of the trial judge and his ruling will not be *985 disturbed on appeal absent a clear showing of abuse. State v. Hampton, supra.

Jurisprudence has recognized that this rule of evidence is limited by the federal and state constitutions and must yield when its application would deny fundamental protections to a criminal defendant. State v. Johnson, 34,902 (La.App. 2d Cir.09/26/01), 796 So.2d 201,[2] citing State v. Graham, 422 So.2d 123 (La.1982). See also State v. Weaver, 05-169 (La.App. 5th Cir.11/29/05), 917 So.2d 600, writ denied, 06-0695 (La.12/15/06), 944 So.2d 1277; State v. Duncan, 563 So.2d 1269 (La.App. 1st Cir.1990), appeal after remand, 593 So.2d 693 (La.App. 1st Cir.1991), writ denied, 594 So.2d 876 (La.1992).
In State v. Duncan, supra, the First Circuit remanded the matter for a hearing to allow the trial court to determine whether the jury's verdict was unanimous because there was a factual question about the vote of one juror. In other cases, courts have refused to order a remand because the allegations were simply that the jury based its verdict on something that arguably was not in evidence. In the instant case, the allegation is that the jury based its verdict on a misinterpretation or misunderstanding of the applicable law. The record shows that the court correctly instructed the jury on the law. The jury's understanding of, or failure to understand, the instruction of the court is not an "extraneous" matter but instead is a question about the intrinsic workings of the jury, something that has traditionally been beyond the scope of inquiry. See State v. Boyles, 567 N.W.2d 856 (S.D.1997). See also United States v. Jones, 132 F.3d 232 (5th Cir.1998), cert. granted in part on other grounds, Jones v. U.S., 525 U.S. 809, 119 S.Ct. 39, 142 L.Ed.2d 31, affirmed, Jones v. U.S., 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999); State v. Mason, 728 N.W.2d 60, 2006 WL 3436470 (Iowa 2006). The record also shows that the evidence was sufficient to support the jury's verdict of guilty. See, e.g., U.S. v. Powell, 469 U.S. 57, 67, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984):
[W]e note that a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. This review should not be confused with the problems caused by inconsistent verdicts. Sufficiency-of-the evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. This review should be independent of the jury's determination that evidence on another count was insufficient. The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilty beyond a reasonable doubt. We do not believe that further safeguards against jury irrationality are necessary.
(Citations omitted.) This argument is without merit.
James Clark / Teresa Rogers Testimony
Defendant next argues that he should have a new trial because he located a witness to the events who could contradict the testimony of Teresa Rogers that she saw the fight between Hailey and Craig and that she saw defendant with a knife. The testimony of this witness, James Clark, was not as conclusive of the issue as defendant argues in brief. Clark admitted that he and Ms. Rogers went outside at some point during the event *986 before defendant left the scene and it was his interpretation of the timing of the events that led to his belief that Ms. Rogers could not have seen what she claimed to have observed. Given the testimony of the other witnesses, especially the testimony of the victim himself, it is very unlikely that the testimony of Clark would have led to a different verdict. This argument is without merit.
Pictures of Chad Weaver's Wounds
Finally, defendant urges that he should have a new trial to allow a jury to see the newly-discovered photos of Chad Weaver's allegedly self-inflicted wounds. Chad Weaver could not be located at any point in these proceedings and did not testify. Nevertheless, according to all of the witnesses, Chad Weaver was not the one who was fighting with the victim when the victim sustained his stab wounds. As noted above, every witness identified defendant as the only person who fought with the victim. The stab wounds to Chad Weaver were of little relevance to the proceeding and confirmation of their existence could not possibly have changed the verdict. This argument is without merit.
Excessive Sentence
The state charged defendant as a fourth felony habitual offender. Two of defendant's prior convictions were from Cass County, Texas, for forgery in 1998 and 2000. His third felony was a Caddo Parish, Louisiana, conviction for forgery in 2001. Based upon these prior convictions, the court adjudicated defendant to be a fourth felony offender.
At sentencing, the victim, Jeremy Craig, testified about the severe impact the crime had upon him financially and mentally and asked the court to impose the maximum sentence. Defendant asked the court to deviate downward from the sentence specified by the habitual offender law because his prior convictions were all non-violent crimes (forgery) and the Texas convictions were the lowest grade of felony offense in that state. The state noted that defendant also had a burglary conviction and had been charged, without adjudication, with attempted murder (the weapon used was a knife) during his time in the Navy. Finally, the state noted that defendant was the only suspect ever arrested in a 1992 unsolved triple murder in Cass County, Texas; however, defendant was no-true-billed by the grand jury.
Although defendant's prior convictions for forgery were for non-violent offenses, he more than made up for that with a vicious and unprovoked attack on Jeremy Craig, who, by all accounts, was simply trying to break up a fight and get the combatants to go home. The court appropriately concluded that there was no reason to deviate from the sentence range required by the habitual offender statute. It was also proper that the sentence be without parole as the underlying offense of attempted second degree murder requires any sentence to be served without benefit of parole. La. R.S. 15:529.1(G); La. R.S. 14:27.

Conclusion
For the reasons set forth above, defendant's conviction and sentence are AFFIRMED.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, CARAWAY, DREW and SEXTON (Pro Tempore), JJ.
Rehearing denied.
NOTES
[1] On remand to the appellate court on an unrelated issue, the defendant in State v. Hughes, supra, had his sentence set aside and the matter was returned to the trial court for re-sentencing. See State v. Hughes, 04-1797 (La.App. 4th Cir.01/24/07), 951 So.2d 1157.
[2] Writ denied sub nom, State ex rel. Johnson v. State, 03-2631 (La.11/08/04), 885 So.2d 1124.